### In re W.G. HALL, Jr. and Gloria M. Hall, Debtors.

### Bankruptcy No. 90–02633–H2–7.

United States Bankruptcy Court, S.D. Texas, Houston Division.

Dec. 18, 1990.

---

Ronald M. Gipson, Galveston, Tex., for debtors.

Lowell T. Cage, Houston, Tex., trustee.

Simon W. Hendershot, III, Pope, Shoemake, Selwyn, Kerr & De Nisco, Houston, Tex., for Hank Thomas.

## MEMORANDUM OPINION

RANDOLPH F. WHELESS, Jr., Chief Judge.

This matter was brought forward by a motion to extend the time for filing an action under 11 U.S.C. § 523(a)(2), (4) or (6). It involves an alleged creditor who had filed suit against Debtor W.G. Hall, Jr. prior to the filing of this bankruptcy case but who was omitted from the original schedules; allegedly by oversight. This alleged creditor, Mr. H.J. Thomas, was notified on or about June 28, 1990 of the pendency of this bankruptcy action, although the Debtor's schedules were not amended to list Mr. Thomas until over one month later and sometime after the dates for filing objections to discharge or objections to dischargeability had expired.

The bankruptcy case was filed April 17, 1990. On or about May 10, 1990, notice was issued by the clerk of the first meeting of creditors, which was set June 4, 1990. The date for filing objections to discharge or dischargeability expired August 3, 1990.

When Mr. Thomas obtained knowledge of the pendency of the bankruptcy case the first meeting of creditors had already taken place. On August 6, 1990, H.J. Thomas filed a motion to extend the time to file a complaint to determine the dischargeability of debt and to object to discharge of debtor. The time for filing such actions had expired August 3, 1990, a Friday. This motion was filed the following Monday. Bankruptcy Rules 4004(b) and 4007(c) provide that such motions must be filed before the 60 days from the first date set for the meeting of creditors has expired (i.e. by August 3, 1990 in this instance).

The allegations proposed to be asserted by Mr. Thomas against the Debtor are serious. They include fraud and forgery. The amounts involved appear to be substantial ($170,000.00).

Under the evidence Mr. Hall, the debtor, had been served in a state court proceeding brought by Mr. Thomas in 1989 and had filed an answer. The Debtor had hired counsel and was actively defending the state court suit. In fact, it was Mr. Hall's state district court counsel that brought to Mr. Thomas' attention the filing of the bankruptcy. This was occasioned by virtue of a Suggestion of Bankruptcy filed in the state district court action on or about June 28, 1990.

Thereafter, Mr. Thomas caused his attorneys to prepare for him a proof of claim which was filed on July 13, 1990; prior to the expiration of the date for filing objections to discharge and/or a complaint to determine dischargeability of a debt.

Mr. Thomas did not receive the usual notice to creditors of the date of the first meeting and of the deadlines for filing objections to discharge and complaints to determine dischargeability. He cites *City of New York v. New York, New Haven, and Hartford Railroad Co.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1952) for the proposition that "... even creditors who have

knowledge of a reorganization have a right to assume that the statutory 'reasonable notice' will be given them before their claims are forever barred." Also cited for this position is *In re Intaco Puerto Rico, Inc.*, 494 F.2d 94, 99 (CA 1, 1974). *In re Harbor Tanks Storage Co.*, 385 F.2d 111 (CA 3, 1967). *Reliable Electric Company v. Olson*, 726 F.2d 620 (CA 10, 1984).

Mr. Thomas also raises the issue of the "due process" clause of the U.S. Constitution.

Mr. Thomas had actual knowledge of the pendency of the bankruptcy 36 days before the bar date, although he was not given notice of the date for the first meeting nor of the deadlines for filing complaints to determine the dischargeability of debts. If Thomas could show that he did not have knowledge of the bankruptcy *in time* to have filed such a complaint, the debt would become nondischargeable under the provision of 11 U.S.C. § 523(a)(3)(B). Indeed, if the actual knowledge had come 37 days later, the claim, if valid, would have been non-dischargeable under that provision.

The problem arises because he obtained knowledge of the bankruptcy filing within the 60 day window for filing such complaints or for obtaining an extension of time, if cause can be shown.

The Debtor contends that even though he (unintentionally) left this creditor off of the schedules and the mailing list, there is no extension of the 60 day limitation period provided by the rules, since the alleged creditor learned of the bankruptcy during the 60 day period. The debtor cites the Fifth Circuit case of *Neeley v. Murchison*, 815 F.2d 345 (CA 5, 1987) in support of his position.

In *Neeley*, the Fifth Circuit held that § 523 of the Code places a heavy burden on the creditor to protect his rights. In that case, the cut-off date for filing complaints to determine dischargeability of a debt had been left blank in the notice of the date (time and place) of the first meeting of creditors. In addition, the clerk orally gave the creditors attorney the wrong cut-off date. Nevertheless, the Court in *Nee-*

*ley* held that this circumstance did not excuse the late filing of the complaint.

In *Neeley*, the Fifth Circuit expressly declined to follow *In re Schwartz & Meyers*, 64 B.R. 948 (Bankr.S.D.N.Y.1986) and that Court's ruling to the effect that the notice requirement of the rule is a necessary predicate and trigger to the running of the 60 day period for filing discharge and/or dischargeability actions. The Fifth Circuit cited with approval *In re Rhodes*, 61 B.R. 626, 630 (9th Cir. BAP 1986) and *In re Tosenberger*, 67 B.R. 256 (Bankr.N.D. Ohio 1986).

In *Schwartz & Meyers*, *Rhodes*, and *Tosenberger* the creditor had been listed by the Debtor and notice had been sent to the creditor's attorney; although in *Rhodes* the creditor's attorney (apparently) did not receive the notice. In *Schwartz & Meyers* the notice did not contain the information about the cut-off dates as provided for by the rules but, as in *Neeley*, the creditor knew of the date for the first meeting and could calculate the cut-off date that is expressly provided for in the Bankruptcy Rules. In *Tosenberger*, the creditor also got the notice of the date for the first meeting but the clerk did not provide the cut-off date information in the notice. In *Neeley*, the creditors attorney had *attended* the first meeting of creditors.

Thus in each of the above cases, the Debtor had scheduled the creditor in order for it to receive the requisite notice and the creditor did receive notice of the date for the first meeting (except in *Rhodes*) and could calculate the cut-off date. In *Rhodes*, the complaint was not filed until almost *seven* months after the creditor's attorney learned of the bankruptcy. Even if the limitation period were tolled in that case as a result of lack of notice, it would have long since run (the 60 days) after the date of actual knowledge of the bankruptcy. That attorney admittedly was unfamiliar with the requirements of the Bankruptcy Rules and in any event did not act diligently.

Moreover, in *Rhodes*, the BAP acknowledged that under some circumstances relief from the harshness of B.R. 4007(c) and

B.R. 9006(B)(3) should be considered. The Court noted with approval *In re Barr*, 47 B.R. 334 (Bankr.E.D.N.Y.1985) and quoted dictum therefrom as follows:

"The Court recognizes that the inflexibility of Rules 4007(c) and 9006(b) has the potential to force highly inequitable results in some cases. A judicially created exception to the Rules might be warranted where the complaining creditor has not received actual notice."

See also *Tosenberger*, page 259, which referred to the same point.

In *Neeley*, the Fifth Circuit noted the difference between a creditor having received notice of the first meeting of creditors but no notice of the cut-off date and a creditor who was unlisted and therefor received no notice but merely learned of the bankruptcy proceeding during the 60 day period. [Note again that actual knowledge obtained after the 60 days period would invoke § 523(a)(3).] However, the Court did not indicate whether that difference would or would not provide a distinction; unless an inference is to be taken from the Court citing *In re Rhodes* and *In re Tosenberger* with approval. Any such comment, however, would have been dicta, as it was in *Rhodes* and *Tosenberger* and *In re Barr* itself.

It is certainly possible to conclude that the rule in the Fifth Circuit is as the Debtor urges. On page 347 of *Neeley*, the Court noted that in *Rhodes* the counsel for the creditor had received actual notice of the bankruptcy proceeding approximately one month before the dischargeability date. That is approximately what occurred here, except that here the motion for extension was filed virtually immediately after the end of the 60 day period and not seven months after knowledge of the bankruptcy filing. Thus the creditor here acted much more quickly and without any harm or effective delay for this Debtor.

There is no evidence here by which the Court could conclude that the creditor could *not* have filed the dischargeability action within the 36 days after he received actual notice. In fact, it is not clear why the motion for extension was filed August 6 and not earlier. This is the primary weakness in this alleged creditor's position. However, it is noted that if this could be shown, Thomas could *even now* invoke an entirely different provision for non-dischargeability under the section, i.e. § 523(a)(3). Unlike sections 523(a)(2), (4) and (6), jurisdiction over such a contention does not rest *exclusively* in this Court and such an action may be commenced at any time.

The Bankruptcy Code and rules intentionally favor the relatively quick granting of a discharge. A fresh start is the primary purpose of the Code. However, this is clearly intended for honest debtors. Moreover, the filing of a dischargeability action does not hold up a discharge. All discharges are subject to non-dischargeable debts. So the issue here is whether the Debtor should suffer the cost and exposure of defending this claim of non-dischargeability of this alleged debt.

While I cannot say that 36 days notice would deprive a creditor of due process, it is clear enough to me that the purpose and intent of B.R. 4007(c) (if not its literal terms) is to give *at least* 60 days for a creditor to file an action claiming the non-dischargeability of a debt. I believe that it is important, though perhaps not required, that the creditor receive advice that it can file such an action and also that it will be prohibited from doing so if it is not done within the 60 day time frame. One Court (*In re Schwartz & Meyers*) believed that it is even mandatory that the creditor be given the dates of the cut-off before the 60 days begins to run. While the Fifth Circuit has clearly determined against that latter proposition, it has not determined that a creditor is not entitled to a full 60 days after information is given to an alleged creditor that a bankruptcy is pending. Sixty days delay from notice to a creditor of the pendency of the bankruptcy does not appear to be too long a delay for a debtor to suffer when it is the Debtor's default that caused the lack of proper and formal notice, whether intentionally or unintentionally. B.R. 4007 actually specifies a longer period of notice (than merely 60

days) when you consider that it is to be given at least 30 days before the first meeting (the date when the 60 days begins to run). Further, when creditors don't get the notice of the first meeting, as here, they are deprived of the opportunity to appear at the first meeting and examine the debtor.

This Court submits that the best construction of B.R. 4007 (especially under the facts now before this Court) would be one which requires adherence to the requirement (by use of the word of the word "shall") that the running of the 60 day period will commence only upon notice to the involved creditor of the pendency of the bankruptcy case (whether or not the creditor is also given notice of the cut-off date). In this way, if the debtor intentionally leaves off the name of a creditor in the hopes that the creditor will not receive timely notice of the cut-off dates, such action would be self defeating. Such a construction would encourage proper listing and noticing of creditors. It would discourage laxity or mischievous behavior in this area.

If *Neeley* were construed to the contrary, a debtor can shorten the already narrow statute of limitations for bringing such actions by deliberately leaving off the name of a creditor likely to bring a significant (in amount) and serious charge against him and then successfully give him actual notice of the case during the 60 day period without information regarding the cut-off dates. That occurred here, although the Debtor alleges that he forgot about this claimant and the state court suit the Debtor was defending.

Such a ruling would be especially harsh in this instance wherein the Debtor was not only previously on notice of the allegations of Mr. Thomas but was actively engaged in defending against these allegations in the State Court—even before he filed bankruptcy. Further, the motion to extend the time was filed only one day late (considering—or not counting—the weekend).

Such a construction here would give Thomas 21 more days to file his complaint, if he is to file one. This would be true because the Court would not count the delay engendered by the dispute over the requested "extension of time".

For this Court to so construe B.R. 4007(c) or, in the alternative, to grant equitable relief from the restrictive provisions of B.R. 9006 and B.R. 4007 by extending the time to file a complaint for an additional period, such as 21 days, would be consistent with a principle of law adopted by federal courts with respect to tolling of statutes of limitations. As determined in *Barley v. Glover*, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1874) when a fraud has been committed and has been concealed and there has been no negligence or laches on the part of a plaintiff in coming to the knowledge of the fraud, the statute of limitations does not begin to run until the fraud is discovered or becomes known to the party suing. See also *Armstrong v. McAlpin*, 699 F.2d 79, 88 (CA 2, 1983); *State of New York v. Hendrickson Brothers, Inc.*, 840 F.2d 1065, 1084–85 (CA 2, 1988), cert. den. 488 U.S. 848, 109 S.Ct. 128, 102 L.Ed.2d 101 (1988).

The Court is not ruling that the Debtor intentionally prevented Thomas from timely learning of the bankruptcy and the cut-off dates and the first meeting date by leaving Thomas off of the schedules and the mailing list. Indeed, the Debtor offered to testify that this was unintentional (after the evidence had closed and by a motion to reopen). The Court has declined to reopen and accept such evidence (so far) as it did not seem material under the authorities. The effect on Thomas is the same either way.

The point is that by filing to list Thomas as a (disputed) creditor and/or by failing to add him to the notice list, which he had a duty to do, the Debtor effectively concealed from Thomas (whether intentionally or unintentionally) the fact of the bankruptcy filing and thus the need to assert his already filed cause of action (1) in another court and (2) within a narrow period of time (i.e. 60 days from a date which had already occurred).

In addition to the rule *tolling* the statute of limitations, there is an additional rule

that has been applied to estop a defendant from asserting the statute of limitations. This rule has been applied when the actions of the defendant caused the Plaintiff's failure to file the suit by active representations to the plaintiff regarding the plaintiff's legal rights. See *Sanchez v. Loffland Bros. Co.*, 626 F.2d 1228 (CA 5, 1980).

No such representations were made in this case, but it seems unfair, and in disregard of the spirit and purpose of B.R. 4007(c), to allow the Debtor to assert the limitation period when his lack of action in scheduling Thomas prevented Thomas from getting timely notice of the bankruptcy and therefore of the need to asset a dischargeability action in *this* Court under § 523, rather than continue his already filed action in the State Court.

The point is that, by analogy, the Debtor's failure to perform his duty to timely list Thomas, whether intentional or unintentional, caused Thomas not to receive the notice of the first meeting (at least 30 days in advance thereof) and thereafter a full additional 60 days to file his complaint. Such circumstances, in this Court's opinion should toll the running of the limitation period provided by the statute and/or allow an extension of time to file such action although not expressly provided for by the Bankruptcy Rules (per *In re Barr, In re Rhodes,* and *In re Tosenberger,* supra.) or estop the Debtor from invoking the limitation period; provided Thomas takes immediate action to file such suit.

In the case of *In re Matter of McGuirt,* 879 F.2d 182 (CA 5, 1989) the Fifth Circuit discussed, but did not decide, the possibility that actual notice to the Debtor of a creditor's intent to object to the Debtor's discharge or to the dischargeability of a particular debt would constitute an informal complaint for such relief so as to allow a late filed but formal complaint to relate back to the time of such notice, if it occurred prior to the expiration of the 60 day period of limitation. In *McGuirt,* the Court held that the allegations in a motion to lift stay to prosecute a prior pending State Court action were not sufficiently specific to meet to requirements pertaining

to that type of allegation. Thus it found no need to decide the legal question of whether such relation-back doctrine exists.

It should be noted that the Court did not discuss whether the allegations in the State Court action were themselves sufficient as pleadings under § 523 or § 727 and, when *coupled with* the motion to lift stay, provided fair notice to the Debtor of the Creditor's intent. Reluctantly, I conclude that by fair implication *McGuirt* stands for the principle that the State Court pleading alone is insufficient to give such notice. This would be because it is not coupled with the requisite notice of intent to pursue the claim as one that is non-dischargeable under § 523, assuming such a relation-back doctrine exists.

In the matter before this Court, the State Court pleadings were made part of this record. No evidence was introduced to show that the creditor had imparted to the Debtor (orally or in writing and within the requisite period) the notion that he intended to make such a claim of non-dischargeability under § 523(a)(2), (4), or (b).

It was not shown that a copy of the complaint was delivered to the Debtor within the requisite period; although he obviously had such a copy served on him prior to the commencement of such period; i.e. prior to the bankruptcy.

If such relation-back doctrine exists, *McGuirt* may or may not stand for the proposition that a proper notice given within the requisite time period which incorporates the requisite allegations by reference to a pending action is insufficient to invoke the doctrine. This was not discussed in *McGuirt.* It may not have been argued. In any event, no facts have been shown in this case to invoke such a doctrine, if it exists.

Nevertheless, despite the fact that Thomas's motion to extend was filed one (business) day late, the Court finds that the Debtor's failure to comply with his duty to timely list Thomas as a creditor (whether intentionally or unintentionally) constitutes cause for extending the time for filing a dischargeability complaint under 11 U.S.C. § 523(a)(2), (4) or (6) and that such failure

either tolls the limitation period provided for by B.R. 4007(c) or estops him from raising it under these circumstances (i.e. where the allegations were already pending in a State Court action and were being actively defended against by him).

Thomas is to submit an order to this effect and allowing him an extension of 21 days from notice of this opinion to file his dischargeability action based on the facts of his pending State Court action.