In re John M. PIERCY, III, Debtor.

**LAWRENCE STEEL ERECTION CO., INC., Plaintiff,**

v.

**John M. PIERCY, III, Defendant.**

**Bankruptcy No. 90–5–5644–SD. Adv. No. A91–0198–SD.**

United States Bankruptcy Court, D. Maryland.

April 21, 1992.

Troy C. Swanson, Baltimore, Md., for debtor, defendant.

Thomas A. Baker, Baltimore, Md., for plaintiff.

## MEMORANDUM DECISION DENYING LAWRENCE'S DISCHARGEABILITY CLAIM

E. STEPHEN DERBY, Bankruptcy Judge.

The primary issue before the court is whether an unscheduled creditor, having actual knowledge of the Debtor's bankruptcy case, is barred from asserting a non-dischargeability claim because of its failure to file a complaint within the deadline period set for dischargeability claims. The court concludes that the objection to dischargeability is barred as late filed pursuant to 11 U.S.C. § 523(c)(1) and Bankruptcy Rule 4007(c). Further, the grounds for relief by summary judgment that plaintiff has set forth are not sufficient as a matter of law. Therefore, plaintiff's motion for summary judgment upon its non-dischargeability complaint against Debtor must be denied, and Debtor's motion for summary judgment is granted.

### I. FACTS

Lawrence Steel Erection, Inc. (Lawrence), an unscheduled creditor of the debtor, John M. Piercy (Piercy), filed an adversary complaint against Piercy seeking a determination of dischargeability excepting Lawrence's debt from discharge. Lawrence holds a judgment from Circuit Court of Baltimore City, (*Lawrence Steel Erection, Inc. v. Piercy, Inc. and John M. Piercy, III*—Case No. 88260011), against Piercy for fraudulent misappropriation of funds under the Maryland Construction Trust Act in the amount of $199,172.06. Md. Real Prop.Code Ann. § 9–201, *et seq.* (1988).

In the circuit court case, Lawrence claimed to be a sub-subcontractor to Piercy, Inc., which was a subcontractor on eight construction projects. Lawrence performed his obligations to Piercy, Inc. under the agreement. However, Piercy, acting as president of Piercy, Inc., failed to pay Lawrence the full amount agreed upon and directed employees of Piercy, Inc. not to remit the remaining balance due to Lawrence. Judgment against Piercy was entered without Piercy being present at the hearing.

Lawrence seeks relief under 11 U.S.C. § 523(a)(4); and it moves for summary judgment, claiming that the state court judgment was prima facie evidence of Piercy's intent to defraud Lawrence. Piercy cross claims for summary judgment, asserting that the claim is barred by Lawrence's failure to file within the deadline for dischargeability claims as required under 11 U.S.C. § 523(c)(1) and Bankruptcy Rule 4007(c). Piercy also asserts that Lawrence failed to state a claim for which relief may be granted under 11 U.S.C. § 523(a)(4).

### II. DISCUSSION

#### A.

Section 523(c)(1) requires a creditor claiming nondischargeability of a debt under 11 U.S.C. § 523(a)(2), (4) or (6) to file a complaint to determine dischargeability. Under Bankruptcy Rule 4007(c), a complaint to determine dischargeability under 11 U.S.C. § 523(c)(1) "shall be filed not later than 60 days following the first date set for the meeting of creditors...." The court is required to give all creditors at least 30 days notice of the deadline for filing. *Id.* Motions for extension of time to file a dischargeability complaint under Rule 4007 must be filed prior to the deadline. See *Collier on Bankruptcy*, § 523.14 (15th ed. 1991).

A related provision, 11 U.S.C. § 523(a)(3)(B), provides that an unlisted or unscheduled creditor's debt is not dischargeable unless the creditor had notice or actual knowledge of the debtor's bankruptcy case in time to permit a timely filing of the dischargeability proceeding required under 11 U.S.C. § 523(c)(1). See *Collier on Bankruptcy*, § 523.13 (15th ed. 1991).

The overwhelming weight of case law has held that where a creditor, listed or unlisted, has notice or actual knowledge of the debtor's bankruptcy proceedings and fails to file a complaint within the deadline under Rule 4007, a complaint pursuant to 11 U.S.C. §§ 523(c)(1) and 523(a)(2), (4) or

(6), or a motion to extend under Rule 4007, is barred. Essentially, 11 U.S.C. § 523(c)(1) places the burden on the creditor claiming nondischargeability under § 523(a)(2), (4) or (6) affirmatively to assert his claim and to protect his interests. The policy is in accord with an underlying principle of bankruptcy to ensure the debtor a fresh start. See *In re Compton*, 891 F.2d 1180 (5th Cir.1990); *In re Sam*, 894 F.2d 778 (5th Cir.1990); *In re Price*, 871 F.2d 97 (9th Cir.1989); *In re Alton*, 837 F.2d 457 (11th Cir.1988); *Neely v. Murchinson*, 815 F.2d 345 (5th Cir.1987); *In re Rhodes*, 61 B.R. 626 (9th Cir. BAP 1986) and *In re Walker*, 103 B.R. 281 (D.Utah 1989). See also, Rule 4007—Advisory Committee Note (1983) and 11 U.S.C. section 523(c) H.R. and S.R. for the Reform Act of 1978.

In *In re Price*, 871 F.2d 97 (9th Cir.1989), a leading case, the court stated that the failure of the debtor to list the complainant as a creditor did not "relieve [the creditor] of his obligation to take timely action to protect his claim." *Id.* at 99. In that case, during state court proceedings, the creditor's counsel received a notice of injunction from the debtor's counsel which indicated that the debtor's bankruptcy case had been filed. The court held that the creditor had actual notice of the bankruptcy proceedings in time to file a complaint, or at least to file a timely motion to extend the deadline. *Id.* The court stated that "while certain debts are not dischargeable in bankruptcy, it is incumbent upon the creditor to institute an action to have the debt declared exempt from the bankruptcy proceedings, provided that he has notice or actual knowledge that the debt is in bankruptcy". *Id.* at 98.

■ In the present case, the undisputed facts drawn from the case file and affidavits are that Lawrence had actual knowledge of Piercy's bankruptcy case that, in the court's opinion, was sufficient to permit timely filing of a nondischargeability complaint. This conclusion is reached notwithstanding Piercy's neglect of his obligation to schedule Lawrence as a creditor, a neglect that would lead the court to resolve close issues of equity against Piercy.

Piercy filed his voluntary petition *pro se* on December 20, 1990, two days after Lawrence obtained its judgment against him. Piercy did not list Lawrence on either his original mailing matrix or on his original schedules. Further, Piercy failed to disclose the lawsuit against him by Lawrence in response to question 10 on his statement of affairs. Lawrence is listed with a type face different from other creditors on Piercy's list of 20 largest unsecured creditors, but it does not appear when Lawrence was added. Regardless, when the court mailed the notice of filing, deadlines and § 341 meeting of creditors on January 3, 1991, it did not go to Lawrence because Lawrence was not on the mailing matrix supplied by Piercy. Counsel for Piercy filed an application for appointment on January 25, 1991. However, even when amended schedules were filed on March 21, 1991, they did not include Lawrence. Therefore, if Lawrence did not have actual and timely knowledge of Piercy's bankruptcy, this complaint would not be barred. 11 U.S.C. § 523(a)(3)(B).

Notwithstanding, Lawrence did have actual notice in time to file a timely dischargeability complaint. The § 341 meeting notice set the § 341 meeting on January 23, 1991, set the deadline for nondischargeability complaints for March 25, 1991, and set the deadline for filing claims as April 25, 1991. Lawrence timely filed a proof of claim on April 25, 1991. However, it knew of the case much earlier, namely, in mid January, 1991, prior to the § 341 meeting of creditors.

On January 15, 1991 the attorneys for Lawrence ordered and paid for 42 pages of the court's case file in this case to be copied, including the § 341 meeting of creditors notice with the deadlines. In response to interrogatories, Lawrence acknowledged that Lawrence's "counsel learned of Defendant's bankruptcy while conducting his own investigation into the assets of John Piercy when he did a judgment search and saw notations of bankruptcy. Plaintiff ordered copies of the bankruptcy documents in January, 1991." On January 22, 1991 counsel for Lawrence

filed a request for notices in this case under Bankruptcy Rule 2002(i) and Local Bankruptcy Rules 19(h)(1). As a result, Lawrence's counsel was added to the mailing matrix. As previously noted, the § 341 meeting was the next day on January 23, 1991. Consequently, Lawrence by counsel had actual notice of Piercy's bankruptcy case more than 60 days before the March 25, 1991 deadline for filing nondischargeability complaints. Lawrence, nevertheless, did not first file its complaint until April 26, 1991. Because of defects in the filing, it was not finally accepted until May 17, 1991 by the clerk's office. Furthermore, Lawrence did not file a motion to extend the deadline before March 25, 1991. Under the majority view represented by the ruling in *Price*, Lawrence's dischargeability complaint is therefore barred.

Lawrence argues that the court should accept the reasoning represented in *In re Hall*, 128 B.R. 175 (Bankr.S.D.Tex.1990). In that case, an unlisted creditor filed a motion to extend the dischargeability deadline after the deadline for such claims had passed. Despite the fact that the creditor had actual knowledge of the bankruptcy case 36 days prior to the deadline for dischargeability complaints, the court ruled that the debtor's failure to list the creditor constituted cause to extend the deadline. *Id.* at 180. The court further held that the debtor's failure to list the creditor while actively defending a state court case filed against him by the creditor led to tolling of the limitation period under Bankruptcy Rule 4007 or, alternatively, prevented the debtor from raising the deadline as a defense. *Id.* at 181.

*Hall* can be distinguished from the present case. In *Hall*, the creditor filed a motion to extend the deadline under Bankruptcy Rule 4007 only one business day after the deadline. In this case, the complaint was first filed more than 30 days after the deadline, and the plaintiff had actual knowledge of the case more than two months before the deadline. Under the circumstances in *Hall*, the court was persuaded that enforcement of Bankruptcy Rule 4007 deadline would lead to a harsh and inequitable result. *Id.* at 179. To the extent *Hall* is read to deviate from the weight of authority illustrated by the *Price* case, this court declines to follow *Hall*. Hard facts may lead to bad law. For example, as may appear from the court's subsequent discussion, delay in filing the dischargeability complaint may have been because the likelihood of success did not appear great.

Therefore, for the above stated reasons, the court concludes that Lawrence's claim is barred pursuant to 11 U.S.C. § 523(c)(1) and Bankruptcy Rule 4007. Although unlisted, Lawrence had actual knowledge of Piercy's bankruptcy case; but it failed to file its complaint within the period designated for dischargeability complaints. Further, because Lawrence had actual knowledge of Piercy's bankruptcy case, Lawrence's claim is not excepted from discharge by § 523(a)(3); and it is not excluded by § 523(b). Piercy was not granted a discharge in a prior case under the Bankruptcy Act, which is a predicate to that latter subsection.

### B.

Even if Lawrence's claim was not time barred, Lawrence has failed to assert a claim for relief. Lawrence bases its nondischargeability claim on 11 U.S.C. § 523(a)(4) which states that a debt owed "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny ..." is excepted from discharge. Lawrence has not asserted facts to support either embezzlement or larceny by Piercy. Therefore, it must establish fraud or defalcation by Piercy while acting in a fiduciary capacity.

Lawrence relies on an uncontested judgment against Piercy in the Circuit Court for Baltimore City. In the state court proceedings, Lawrence asserted that Piercy, acting as President of Piercy, Inc., a subcontractor, held money received from the general contractor on eight projects in trust for Lawrence, a sub-subcontractor. Lawrence also claimed that under Maryland Construction Trust Statute, Md. Real Prop.Code Ann. § 9–201, *et seq.*, Piercy's

failure to remit the full balance owed to Lawrence was prima facie evidence of fraud.

### 1. Collateral Estoppel.

■ The bankruptcy court has exclusive jurisdiction in matters concerning the dischargeability of debts, as represented by § 523(c)(1). See *In re Eskenazi*, 6 B.R. 366 (9th Cir. BAP 1980); *In re Kaufman*, 85 B.R. 706 (Bankr.S.D.N.Y.1988); and *In re Borbridge*, 81 B.R. 332 (Bankr.E.D.Pa. 1988). See also *Collier on Bankruptcy*, §§ 523.05 and 523.14 (15th ed. 1990) and Rule 4007—Advisory Committee Note (1983). Hence, the bankruptcy court is required to make a final determination on the factual and legal issues of dischargeability.

■ The doctrine of collateral estoppel and res judicata are applicable to dischargeability claims where there is a final judgment from a state court proceeding. The doctrines are applicable only when the relevant facts and issues have been actually litigated by the state court and were necessary to the state court decision. *In re Raynor*, 922 F.2d 1146 (4th Cir.1991); *Combs v. Richardson*, 838 F.2d 112 (4th Cir.1988); *In re Halpern*, 810 F.2d 1061 (11th Cir.1987); *In re Shuler*, 722 F.2d 1253 (5th Cir.1984); *In re McCown*, 129 B.R. 432 (Bankr.D.Md.1991); *In re Myers*, 52 B.R. 901 (Bankr.E.D.Va.1985); *In re Pitner*, 6 B.R. 731 (Bankr.E.D.Tenn.1981); see also Restatement (Second) Judgments § 27 (1982). The standard of proof in dischargeability proceedings is the preponderance of evidence standard. *Id., Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

The bankruptcy court may honor Lawrence's state court judgment only with regard to issues actually litigated and decided during the state court proceedings. Because of Piercy's failure to appear at the state court trial, Lawrence's judgment is an uncontested judgment, although a hearing was conducted. Therefore, there was no actual litigation of the issues and the doctrine of collateral estoppel is inapplicable in determining Lawrence's claim of nondischargeability. See *In re Raynor*, 922 F.2d 1146 (4th Cir.1991); and *In re Myers*, 52 B.R. 901 (Bankr.E.D.Va.1985).

In a similar case, *In re Raynor*, 922 F.2d 1146 (4th Cir.1991), the creditor obtained an uncontested judgment against the debtor from a state district court awarding damages for fraud. The creditor initiated an adversary proceeding to determine dischargeability under 11 U.S.C. § 523(a)(5) based upon the state court judgment. The trial court granted summary judgment for the creditor, but the appellate court reversed. While acknowledging the applicability of the doctrine of collateral estoppel in dischargeability proceedings, the court held that "a state court default judgment does not have collateral estoppel effect because it is not the result of actual litigation." *Id.* at 1149. The creditor was not allowed to invoke the state court judgment in order to bar the debtor's discharge by relying on collateral estoppel. *Id.* at 1150.

Lawrence relies on a similar unpublished Maryland bankruptcy case, *Reed and Reed, Inc. v. Parks*. Exhibit F, Adv. No. 90–A–0272–PM, 141 B.R. 92 (Bankr.Md.1991). The creditor in that case had obtained a summary judgment from the state court against the debtor under the Maryland Construction Trust Statute. The complaint alleged that a fiduciary relationship existed between the creditor and debtor and that the debtor converted funds with intent to defraud. The creditor made a claim of nondischargeability under 11 U.S.C. § 523(a)(4). Citing the doctrine of collateral estoppel, the bankruptcy court honored the state court judgment as sufficient to support the creditor's dischargeability claim under 11 U.S.C. § 523(a)(4) since the fraud and trust issues were averred and decided during the state court proceedings.

■ The *Parks* case can be distinguished from the present case because the creditor in that case obtained a summary judgment. The doctrine of collateral estoppel can be invoked as to undisputed material facts necessary to a summary judgment.

### 2. Fraud.

■ Fraud within the meaning of 11 U.S.C. § 523(a)(4) requires positive fraud or fraud in fact, involving moral turpitude or intentional wrong. Accordingly, it cannot be implied fraud or fraud in law which may exist without bad faith or immorality. See *Collier on Bankruptcy,* § 523–14(1)(a) (15th ed. 1991), quoting *Western Union Cold Storage Co. v. Hurd,* 116 F. 442 (1902) and *Neal v. Clark,* 95 U.S. 704, 24 L.Ed. 586 (1877).

■ Fraud under Maryland Construction Trust Statute can be viewed as implied fraud or fraud in law. Under Md. Real Prop.Code Ann. § 9–201, monies paid to contractors or subcontractors for work completed by subcontractors are held in trust. Once the owner has paid for the construction under a contract, a contractor or subcontractor's failure to pay subcontractors for work completed or use of such funds for other purposes is held to be prima facie evidence of fraud. No evidence of bad faith is necessary. See Md. Real Prop. Code Ann. § 9–203. Hence, a finding of fraud under Maryland Construction Trust Statute, § 9–203, is not sufficient to support a finding of fraud under 11 U.S.C. § 523(a)(4).

■ In the present case, Lawrence asserts that Piercy's failure to pay the remaining balance due Lawrence and Piercy's directions to employees not to pay any monies to Lawrence constituted misappropriation of funds held in trust under the Maryland Construction Trust Statute. According to the facts presented in the state court proceedings, Piercy, Inc. had been paid in full for the work on the eight projects. Lawrence asserted that Piercy in his capacity as President did not use other funds to pay other debts to Lawrence. However, Piercy, Inc. did pay a substantial portion of the amount owed to Lawrence. Although these facts support a finding of prima facie fraud under the Maryland statute, they do not establish actual fraud or defalcation on the part of Piercy in failing to pay the remaining balance due to Lawrence, as is required under 11 U.S.C. § 523(a)(4).

### 3. Fiduciary Relationship.

■ 11 U.S.C. § 523(a)(4) requires that the fiduciary relationship between the creditor and the debtor be one based in fact prior to the act of the debtor which is questioned. The statute also requires that there be a technical trust or an express trust which indicates the intent of both parties to establish a fiduciary relationship. The trust cannot be *ex maleficio, i.e.* one that is imposed because of the act of wrongdoing out of which the debt is owed. See *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *In re Marino,* 115 B.R. 863, 868 (Bankr. D.Md.1990); *In re Holmes,* 117 B.R. 848, 852 (Bankr.D.Md.1990); *In re Hutton,* 117 B.R. 1009 (Bankr.N.D.Okl.1990); *In re Shervin,* 112 B.R. 724 (Bankr.E.D.Pa.1990); *In re Myers,* 52 B.R. 901 (Bankr.E.D.Va. 1985) and *In re Shipe,* 41 B.R. 584 (Bankr. D.Md.1984); see also *Collier on Bankruptcy,* § 523.14 (15th ed. 1991).

■ Maryland case law is divided as to whether the Maryland Construction Trust statute creates a fiduciary relationship within the meaning of 11 U.S.C. § 523(a)(4). In *In re Holmes,* 117 B.R. 848 (Bankr. D.Md.1990) the statute was held to be implied in law and hence did not fulfill the requisite "technical" or "express" trust under § 523(a)(4). In *In re Marino,* 115 B.R. 863 (Bankr.D.Md.1990), the court stated that the statute created an express trust as between the contractor and subcontractor. *Id.* at 869. However, both cases held that an individual debtor, acting as an officer or agent of a corporation, could not be held liable under the statute absent a showing of the individual's actual intent to defraud, nor did the statute impose a fiduciary duty on that individual. *Holmes* at 855; *Marino* at 873.

In *Holmes,* 117 B.R. 848 (Bankr.D.Md. 1990), the creditor filed a dischargeability complaint under § 523(a)(4) based upon an allegation of conversion of funds which was a breach of fiduciary duty and a violation of the Maryland Construction Trust Statute. The court granted the debtor's motion to dismiss. The court held that the

statute created a trust by the operation of law and was not based upon the intention of the parties. Therefore, the statute was held not a technical or express trust as required under 11 U.S.C. § 523(a)(4):

> "In order for a debt to be nondischargeable under § 523(a)(4) arising from a breach of fiduciary duty, the debtor must have been acting as a trustee of an express or technical trust" (*Id.* at 852); . . . . "The Maryland Construction Trust Statute does not create an express or technical trust on the part of a contractor as trustee on behalf of a subcontractor." *Id.* at 855.

The court also concluded that the statute did not impose a fiduciary duty on the debtor as contractor and that "[t]he individual debtor cannot be held liable for the misconduct of the corporate contractor in absence of fraud." *Id.* at 855.

In *Marino*, 115 B.R. 863 (Bankr.D.Md. 1990), the court stated that the Maryland Construction Trust Statute created a trust "in favor of subcontractors 'who did work or furnished materials ... for ... the building, ...'" *Id.* at 869. The court's conclusion suggests that since the trust is created upon the receipt of money from the owners and not because of the later misuse of the money by contractors, then the trust created by the Maryland Construction Statute was sufficient under 11 U.S.C. § 523(a)(4). *Id.* at 867–868. However, the court ruled that the statute did not impose nondischargeable personal liability on officers, directors and employees of a contractor. Such liability would be nondischargeable only when there is an intent to defraud by the individual officer, director or employee. The Court stated that "it is not a general fiduciary liability for all purposes." Id. at 872. Therefore, the court held that an individual cannot be held liable merely because of his position as officer, agent or employee of a corporate contractor under the Construction Trust Statute.

In the present case, Piercy filed for bankruptcy as an individual under Chapter 11. At the time that the debt was owed to Lawrence, Piercy was acting as President of Piercy, Inc., and as such was an agent and officer of the company. Piercy cannot be held liable for the debt owed to Lawrence by Piercy, Inc., absent his intent to defraud under the analysis in *Marino* and *Holmes*.

## III. SUMMARY

Lawrence's claim is barred in accordance with 11 U.S.C. § 523(c)(1) and Rule 4007(c) due to Lawrence's failure to file a timely complaint to determine dischargeability. Lawrence, although an unlisted creditor, had actual knowledge of the deadline for dischargeability complaints more than 60 days before the deadline. Accordingly, Lawrence's motion for summary judgment is denied, and Piercy's motion for summary judgment is granted. The debt owed by Piercy to Lawrence is discharged.

Even if the court were to allow Lawrence's claim, the doctrine of collateral estoppel would not have prevented discharge of Piercy's debt since Lawrence's state court judgment was an uncontested judgment. For collateral estoppel to apply, both the issues of fraud and fiduciary relationship must have been litigated and established in accordance with 11 U.S.C. § 523(a)(4). The standards for fraud and fiduciary capacity under the Maryland Construction Trust Statute fall short of the required elements of actual fraud and of a technical or express trust under 11 U.S.C. § 523(a)(4). Lawrence's uncontested judgment under the Maryland Construction Trust Statute, by itself, does not support a finding of fraud within a fiduciary capacity pursuant to 11 U.S.C. § 523(a)(4).