**In re Stephen Scott McCOWN, Debtor.**

**Ja–Wan McGEE, Constance McGee, Randolph King, Plaintiffs,**

v.

**Stephen Scott McCOWN, Defendant.**

**Bankruptcy No. 89–5–1639–SD.
Adv. No. A89–0305–SD.**

United States Bankruptcy Court,
D. Maryland.

July 11, 1991.

John T. Enoch, John Amato, IV, Goodman, Meagher & Enoch, Baltimore, Md., for plaintiffs.

Carol L. McCulloch, Towson, Md., for debtor.

Robert E. Baker, Towson, Md.

## MEMORANDUM OF DECISION DENYING DISCHARGEABILITY OF A DEBT

E. STEPHEN DERBY, Bankruptcy Judge.

The issues raised by plaintiff creditors' renewed motion for summary judgment and defendant Debtor's opposition and cross motion for summary judgment involve how collateral estoppel should be applied in this dischargeability litigation under 11 U.S.C. § 523(a)(6). Both the creditors and the Debtor seek to invoke collateral estoppel to prevail. To establish collateral estoppel, Debtor relies on a consent judgment, and the creditors rely on administrative findings.

### I. Facts

Debtor, as an off-duty Baltimore City police detective, shot plaintiff Ja–Wan McGee, then 17 years old, early in the evening of March 20, 1980. The shooting occurred in a carry-out sandwich and pizza shop in Baltimore City. Debtor had observed two youths waiting outside the shop. When all customers other than Debtor had left, the youths entered and one reached into his pocket. Thinking a robbery was about to occur and that one youth was reaching for a weapon, Debtor fired his service revolver at the youth. The suspected weapon turned out to be a cigarette lighter. Tragically, plaintiff McGee was permanently injured and rendered a paraplegic.

A disciplinary hearing on five charges against Debtor was conducted by a Trial Board of the Baltimore City Police Department. The charges were based on alleged violations of rules of the Police Department for the use of firearms. Debtor was represented by counsel. The hearing convened on June 16, 1980, and it lasted 2½ days. A transcribed record was created.

Included in the Trial Board's findings and recommendations were the following admissions and findings of fact:

"... Detective Police Officer McCown fired his service revolver three times when there existed insufficient facts and circumstances to warrant reasonable belief of imminent danger to himself."

\* \* \* \* \* \*

"Detective Police Officer McCown testified that he was certain the two black males outside of B.J.'s Pizza Shop were going to commit criminal activity since all customers at this point had left the store and they were still outside the store looking in. Detective Police Officer McCown acting on this belief, then prepared himself by remov-

ing his service revolver from his waistband holster and placing same in the outside pocket of his raincoat. Detective Police Officer McCown continued to maintain his position between the cigarette machine and the counter which supplied the only available cover in the customer portion of the store. "Testimony indicates Detective Police Officer McCown who prepared himself for a crime to be committed by the two black males, failed to exercise any other option available to him at this time, which his training should cause him to do, such as:

"a. identify himself as a Police Officer to the owner or employee of the Pizza shop and request they telephone for a back-up unit. (Detective Police Officer McCown, in his formal statement to I.I.D. on 15 April 1980, indicated that he knew a uniformed officer was close by as he had observed a three wheel police motor scooter as he arrived at the shopping center.)

"b. accost the suspects, identify himself as a Police Officer, and conduct a stop and frisk.

"Further testimony indicates that Detective Police Officer McCown, who had prepared himself mentally and physically for a crime to be committed, had total control over the customer area of B.J.'s Pizza Shop prior to the entry into same by the two black males, and having such control, was in no imminent danger."

"... Detective Police Officer McCown had total prior and existing control of the situation, chose not to exercise available options for assistance, was not in imminent danger, and should not have fired his service revolver."

\* \* \* \* \* \*

"... Detective Police Officer McCown had control of the situation prior to the entry into B.J.'s Pizza Shop by the two black males, and had in fact removed his service revolver from his waistband holster and placed same in his outer raincoat pocket and ... there was no imminent danger to him necessitating the fir-

ing of his service revolver in self defense."

\* \* \* \* \* \*

"He fired his service revolver three times when there existed insufficient facts and circumstances to warrant reasonable belief of imminent danger to himslef [sic]."

The Board found Debtor guilty on all five charges, and it recommended the termination of Debtor's employment with the Baltimore Police Department. Police Commissioner Pomerleau approved the recommended action, and he terminated Debtor from his position as a police detective. Debtor appealed.

On appeal, the Baltimore City Court, which was then a division of the Supreme Bench of Baltimore City, a court of general jurisdiction, affirmed on March 6, 1981. The court specifically noted that "... Appellant presented a vigorous defense before the Board as to the justifications for his actions, ...." Although it affirmed the guilty findings on only three of the operative charges, as well as the termination of Debtor's employment with the police department, the court found the remaining two charges were "fully included" in the first three, and they were stricken as invalid. In its opinion, the Baltimore City Court rejected challenges founded on Maryland's Administrative Procedure Act and based on alleged violations of Debtor's constitutional right to due process of law. The court stated: "Any inference of prejudice [from pretrial publicity] or other unfairness by the Board members as suggested by Appellant would only be speculative." There was no further appeal by Debtor.

Ja-Wan McGee and his parents, plaintiffs here, brought an 18 count civil action in the United States District Court against Debtor, Police Commissioner Pomerleau, and the Mayor & City Council of Baltimore. In Counts I and IV Ja-Wan McGee and his parents, respectively, sought to recover both compensatory and punitive damages from Debtor for violations of Ja-Wan McGee's civil rights under Sections 1983 and 1988 of the Civil Rights Act. 42 U.S.C. §§ 1983, 1988. In Counts VII and X they sued Debtor for common law assault and

battery, and in Counts XIII and XVI they sought damages for negligence.

The civil action by plaintiffs against Debtor was settled April 2, 1984, almost three years after the Baltimore City Court's affirmance of Debtor's dismissal from the police department had become final. Pursuant to the settlement terms, judgments by consent were entered against Debtor on the negligence counts in favor of Ja–Wan McGee for $950,000 and his parents for $50,000. The Civil Rights Act and the assault and battery counts were dismissed by plaintiffs, without prejudice. Presumably, further action on the dismissed counts is now barred by applicable statutes of limitation.

After the settlement had been placed on the record, the following colloquy about the possible bankruptcy discharge of the consent judgments transpired:

"THE COURT: And it is my understanding that, of course the defendant McCown is reserving the right, his right under the bankruptcy laws, but there is no intention to take any action immediately in that regard.

"MR. BOLLINGER [Defendant Debtor McCown's attorney]: That's correct, Your Honor.

"THE COURT: Depending on what the plaintiffs wish to do as far as the assignment [of Debtor's indemnification rights, if any, against the Police Commissioner or the City to the plaintiffs] is concerned.

"MR. BOLLINGER: That's correct, Your Honor.

"THE COURT: And I believe that you have advised the defendant McCown that these judgments entered here are on the common law counts and therefore would be dischargeable; whereas judgments that might be entered on the federal counts, the civil rights counts, would not be.

And so this is the reason why the settlement is being structured in this fashion, so that he would have the right to pursue discharge in bankruptcy at the appropriate time.

"MR. BOLLINGER: That is correct Your Honor.

"THE COURT: And that is your understanding too?

"MR. ENOCH [plaintiffs' counsel]: Yes, I understand that, Your Honor.

"THE COURT: Very well.

All right, Well, we'll enter those judgments...."

Debtor filed this case under Chapter 7 of the Bankruptcy Code on May 17, 1989, and he scheduled a judgment debt to plaintiffs of $1,000,000. The Chapter 7 Trustee filed a report of no distribution, and Debtor's discharge was entered, without prejudice to the instant complaint.

Plaintiffs request in their complaint that the judgment debts be found not dischargeable. They maintain that the Board's findings of fact establish an exception to discharge under 11 U.S.C. § 523(a)(6) "for willful and malicious injury by the debtor to another entity...." Plaintiffs ask the court to look behind the record of the consent judgment and find that Debtor is collaterally estopped from denying the facts as found against him by the Trial Board in the police disciplinary proceeding. The court notes that because plaintiffs incorporated the factual allegations which supported their civil rights and assault and battery counts into the negligence counts of their civil complaint, the allegations of the negligence count, if they had been proven, could support a finding of willful and malicious injury to plaintiffs by Debtor.

Debtor contends, however, that the plaintiffs are barred by the doctrine of collateral estoppel from going behind the consent judgments on the negligence counts. He further argues they are bound by their agreement on the record that the consent judgments would be dischargeable in bankruptcy.

## II. Conclusions

The doctrine of collateral estoppel may be invoked in dischargeability proceedings under 11 U.S.C. § 523(a). *Grogan v. Garner,* —— U.S. ——, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991); *Combs v. Rich-*

*ardson,* 838 F.2d 112, 115 (4th Cir.1988). Further, the standard of proof to establish nondischargeability of a debt is a preponderance of the evidence. *Id.*

■ To invoke the doctrine of collateral estoppel, however, the issue as to which it is raised must have been both litigated and determined. This proposition was recently confirmed in *M & M Transmissions, Inc. v. Raynor,* 922 F.2d 1146 (4th Cir.1991). In *Raynor* the court held that the bankruptcy and district courts erred in denying a debtor's discharge by accepting as res judicata a prior state court default judgment on an issue of fraud, because the issue of fraud had not actually been litigated. The court of appeals stated the law in this circuit as follows:

> The common denominator of these four discharge cases is their recognition that *an indispensable requirement of res judicata (more precisely, issue preclusion or collateral estoppel) is actual litigation of the issue. See Restatement (Second) Judgments § 27 (1982).* They illustrate the law of the circuit: To preclude a debtor from litigating an issue dispositive of discharge, the record of the case giving rise to the judgment debt must show that the issue was actually litigated and determined by a final valid judgment in an earlier proceeding and that it was necessary to the decision. *Combs v. Richardson,* 838 F.2d at 113; *see also Restatement (Second) Judgments* § 27. Moreover, the bankruptcy court must determine whether the issue was actually litigated "with particular care." *Combs v. Richardson,* 838 F.2d at 113.

*Id.* at 1149. (Emphasis supplied).

In *Raynor,* the fourth circuit concluded that the issue of fraud had not been actually litigated. Therefore, the court reversed the lower court's denial of discharge and remanded with instructions that the bankruptcy court conduct an evidentiary hearing on the issue of fraud to determine if the debt should be discharged.

■ The requirement that the issue actually have been litigated may also be applicable where res judicata is invoked as to a consent judgment. *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). In *Brown v. Felsen* a consent judgment was entered based on a stipulation, and neither the judgment nor the stipulation disclosed the basis of liability. The judgment debtor filed bankruptcy and defended a dischargeability complaint on the ground that the consent judgment lacked any indicia of fraud and was res judicata. The Supreme Court rejected the defense and allowed the bankruptcy court to determine if the debtor committed fraud.

■ In the case at hand, there was no trial on the negligence counts in the United States District Court civil action. Debtor's defense that collateral estoppel bars the court from looking behind the consent judgment on the negligence counts must therefore be rejected.

■ The court also rejects Debtor's argument that plaintiffs agreed that the consent judgment would be dischargeable in bankruptcy. The impact of the colloquy with the court was that plaintiffs acknowledged that Debtor could pursue discharge of the consent judgments in bankruptcy. The consent judgments were not indisputably nondischargeable, but neither were they automatically dischargeable. Plaintiffs did not waive their right to dispute dischargeability if Debtor sought a discharge in bankruptcy.

■ As to plaintiffs' contention that Debtor is collaterally estopped to deny facts found by the police Trial Board, the rule is that collateral estoppel may be invoked as to issues litigated in administrative proceedings when three conditions are met. The agency must have been acting in a judicial capacity, disputed factual issues must have been properly before it, and the parties must have had an adequate opportunity to litigate. *United States v. Utah Constr. & Min. Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966); *Eilrich v. Remas,* 839 F.2d 630, 633 (9th Cir.1988). Application of collateral estoppel is particularly compelling where the administrative action based on the administrative findings has been appealed to a

court of general jurisdiction and affirmed. In the present case, the Trial Board was acting in a judicial capacity, the matter was within its administrative jurisdiction under Maryland law, and both parties had an opportunity to litigate. The Baltimore City Court noted on appeal that Debtor had presented a vigorous defense before the Trial Board. Further, the administrative decision was appealed by Debtor and affirmed by a court of general jurisdiction.

■ Because the legal standards by which Debtor was judged in his disciplinary hearing were contained in police department rules, findings that those rules were violated are not collateral estoppel on the legal standard by which dischargeability under 11 U.S.C. § 523(a)(6) must be determined. However, Debtor may be collaterally estopped from relitigating facts necessarily found by the police Trial Board in making its determinations. As stated by the Supreme Court in *Grogan v. Garner*, 111 S.Ct. at 658:

"... a bankruptcy court could properly give collateral estoppel effect *to those elements* of the claim *that are identical to the elements required for discharge and which were actually litigated* and determined in the prior action. (Emphasis supplied.)

■ The standard of proof in the prior action, of course, may be no less than the standard which must be satisfied to establish nondischargeability. However, as noted above, the standard to establish nondischargeability is only preponderance of the evidence, and there is no lower standard the police Trial Board could have used to support its findings against Debtor. Consequently, the Debtor is collaterally estopped from relitigating those facts found by the police Trial Board. The issue to be determined in ruling on the instant motions for summary judgment is whether the facts as admitted and as found by the police Trial Board are sufficient to establish as a matter of law that the consent judgments are nondischargeable under 11 U.S.C. § 523(a)(6).

This court concludes that the Police Board's findings of fact establish that the Debtor willfully and maliciously injured plaintiff Ja–Wan McGee, so that the debt obligation arising from the consent judgments is barred from discharge under Section 523(a)(6). In the case of *In re Ricketts*, 40 B.R. 676, 678 (Bankr.D.Md.1984), in which the court held a damage claim was not dischargeable where a debtor had intentionally deprived plaintiff of her property, Judge Mannes of this court relied on the following interpretation of willful and malicious injury.

An injury to an entity or property may be malicious injury within § 523(a)(6) if it was wrongful and without just cause or excessive, even in the absence of personal hatred, spite or ill-will. The word willful means deliberate or intentional, a deliberate and intentional act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury.

3 Collier on Bankruptcy, Para. 523.16[1] (15th ed.). The term "malicious" has been interpreted to require knowing wrongfulness or knowing disregard of the rights of another. *Bennett v. W.T. Grant Co.*, 481 F.2d 664, 665 (4th Cir. 1973).

■ There are two elements which must be established before a debt will be found not dischargeable under Section 523(a)(6), namely, willful injury and malicious injury, by a debtor to another entity. *St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1008–1010 (4th Cir. 1985). Entity includes an individual. 11 U.S.C. §§ 101(14), 101(37). As to the first element, willful means deliberate or intentional, and reckless disregard will not satisfy the willfulness element. H.R.Rep. No. 595, 95th Cong., 1st Sess. 365 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 79 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

■ Concerning the second element, special malice by a debtor is not required. *St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d at 1008–1010. Implied

malice is sufficient, and it may be shown by the acts of a debtor under the circumstances presented. *Id.* As explained by the circuit court in *Vaughn,*

> To require specific malice or some other strict standard of malice for non-dischargeability of a debt under the Bankruptcy Code would undermine the purposes of that provision and place "a nearly impossible burden" on a creditor who wishes to show that a debtor intended to do him harm. [citations omitted.] To require such specific malice would restrict § 523(a)(6) to the small set of cases where the debtor was foolhardy enough to make some plainly malevolent utterance expressing his intent to injure his creditor.

> [T]here is no need to show specific malice under 523(a)(6) of the Code on the part of the debtor. Something implied is no less true than something expressed. Only the method of proof of the truth is different. Implied malice, which may be shown by the acts and conduct of the debtor in the context of their surrounding circumstances, is sufficient under 11 U.S.C. § 523(a)(6).

*Id.* at 1009–1010. The deliberate shooting of another, not performed in self defense, has been held to be a malicious act, and an unjustified intent to kill or seriously injure another reflects ill-will. *In re Pitner,* 6 B.R. 731, 733 (E.D.Tenn.1980), *affd.,* 696 F.2d 447 (6th Cir.1982).

■ The facts of this case show that Debtor's injury of plaintiff Ja–Wan McGee was both willful and malicious. The Debtor deliberately and intentionally fired his gun, seriously injuring the victim. Before Ja–Wan McGee entered the pizza shop, Debtor "... prepared himself by removing his revolver from his waistband holster and placing same in the outside pocket of his raincoat." He maintained a position between the cigarette machine and the counter which supplied the only cover in the customer area, and he was prepared both mentally and physically for a crime attempt. When Debtor thereafter fired his revolver, he fired it at Ja–Wan McGee, he fired it three times, and he hit Ja–Wan McGee with the shots causing the injuries

which gave rise to the civil action settlement. The conclusion is inescapable that Debtor deliberately shot at Ja–Wan McGee knowing he would injure him and intending to do so, and his shots caused the injury. Plaintiffs' damage claim is thus for willful injury.

■ Malice is demonstrated by the circumstances. Debtor "... had total control over the customer area...." He failed to exercise options available to him which he was trained to do, namely, he did not accost the suspects and identify himself as a police officer, and he did not request back-up assistance although he knew a uniformed officer was nearby. There "... existed insufficient facts and circumstances to warrant [a] reasonable belief [by Debtor] of imminent danger to himself" which would necessitate Debtor's firing of his service revolver. Because Debtor's act of firing his service revolver at plaintiff three times was not justified action by a police officer and was not necessitated in self defense, it must be considered malicious in the circumstances presented. It was a deliberate act; the consequence of harm was known and intended; and the act was not justified by police procedure or the need for self defense.

Consequently, this court finds the facts as admitted and as found by the Trial Board to be sufficient to establish, by a preponderance of the evidence, that Debtor's shooting caused a willful and malicious injury to plaintiff Ja–Wan McGee, such that plaintiffs are entitled as a matter of law to have the debt obligation arising from the consent judgment to be excepted from Debtor's discharge. This court will, therefore, grant plaintiffs' renewed motion for summary judgment and deny Debtor's cross motion for summary judgment.