In re David F. BERNSTEIN, Debtor.

James Arlin RAMSEY, Plaintiff,

v.

David F. BERNSTEIN, Defendant.

Bankruptcy No. 95–5–7331–SD.
Adv. No. 95–5647–SD.

United States Bankruptcy Court,
D. Maryland.

May 28, 1996.

476

S. Rod Acchiardo, Baltimore, Maryland, for Debtor/Defendant.

Daniel J. Mellin, Hillman, Brown & Darrow, P.A., Annapolis, Maryland, for Plaintiff.

Marc S. Baer, Chapter 7 Trustee, Baltimore, Maryland.

## MEMORANDUM GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

E. STEPHEN DERBY, Bankruptcy Judge.

The Plaintiff, James Arlin Ramsey, is a judgment creditor of the Debtor/Defendant, David F. Bernstein, by virtue of a judgment issued by the Circuit Court for Dickenson County, Virginia on February 7, 1995. This judgment was amended on February 23, 1995. As the judgment now stands, it is in the amount of $150,000 compensatory damages and $350,000 punitive damages, for a total amount of $500,000. Plaintiff's Complaint seeks to have this judgment deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(6) because it arose from a "willful and malicious injury by the debtor to" Plaintiff.

Relying on the doctrine of collateral estoppel and the Circuit Court for Dickenson County judgment, Plaintiff has pressed a motion for summary judgment, supported by affidavits and a Certification of Official Record in Case No. CL94–49, Dickenson County, Virginia, Circuit Court. Defendant opposes Plaintiff's motion on the ground that there is a material issue of fact, which was not litigated or necessarily determined in the state court action, namely, whether Defendant's conduct was malicious. Therefore, as a matter of law, Defendant argues that Plaintiff is not entitled to summary judgment. Defendant's opposition is supported by an affidavit of the Defendant on personal knowledge.

### I. SUMMARY JUDGMENT

Pursuant to Fed.R.Civ.P. 56(c), made applicable by Bankruptcy Rule 7056, summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In determining the facts for summary judgment purposes, the court may rely on affidavits made with personal knowledge

that set forth specific facts otherwise admissible in evidence and sworn or certified copies of papers attached to such affidavits. Fed.R.Civ.P. 56(e), made applicable by Bankr.Rule 7056. When a motion for summary judgment is made and supported by affidavits or other evidence, "an adverse party may not rest upon mere allegations or denials ..." *Id.* While the court must construe all inferences in favor of the non-moving party, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. at 2513–14, the court is bound by factual determinations made in prior actions where collateral estoppel applies. *Allen v. McCurry,* 449 U.S. 90, 94–95, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980).

## II. ADMISSIBILITY OF DOCUMENTS

■ Plaintiff supports his motion for summary judgment with the affidavits of William J. Sturgill and James Arlin Ramsey. William J. Sturgill certifies on his affidavit that he is competent to testify and that he has personal knowledge of the facts material to this case. However, Sturgill swears to the facts stated in his affidavit as being based on "knowledge, information, and belief," not personal knowledge. Moreover, the court finds that the statements in Sturgill's affidavit either could not have been made on personal knowledge, or are duplicative of the Circuit Court of Dickenson County record. The court, therefore, disregards the Affidavit of William J. Sturgill. *See* Fed.R.Civ.P. 56(e), made applicable by Bankr.Rule 7056. James Arlin Ramsey fails to state whether the facts listed in his affidavit are made with personal knowledge. Accordingly, the court will also not rely on his affidavit. *See id.*

■ The Certification of Official Record Case No. CL94–49, Dickenson County Virginia, Circuit Court is material to this case, and it is properly certified under the seal of the Dickenson County Clerk of Circuit Court and is signed by both the court clerk and the Honorable Donald A. McGlothlin, Jr. Pursuant to Federal Rule of Evidence 902(1), a public document "bearing a seal purporting to be that ... of any State ... or of a political subdivision, department, officer, or agency, thereof, and a signature purporting to be an attestation or execution" is self-authenticating and is admissible as evidence. FRE 902(1). *See also* FRE 803(8) (exempting public records from the hearsay rule). Defendant's affidavit is also admissible because it is sworn to on personal knowledge.

## III. FACTS

The facts are gleaned from the Certification of Official Record in Case No. CL94–49, Dickenson County, Virginia, Circuit Court, Defendant's affidavit and the representations in Defendant's Opposition to Motion for Summary Judgment, which the court accepts as admissions in considering Plaintiff's motion for summary judgment.

Defendant was president of A–Baer Bail Bonds, Inc., a Maryland Corporation, in the business of writing bail bonds. *Defendant's Affidavit.* Defendant travelled to southern Virginia in search of a fugitive who had skipped bail. *Id.* Plaintiff alleged in the Dickenson County complaint that on or about April 23, 1994, Plaintiff was driving on a public roadway near McClure, Dickenson County, Virginia, when he was stopped, handcuffed and detained by the Defendant at gunpoint. Plaintiff was eventually released from Defendant's custody when his fingerprints did not match the fingerprints forwarded by Maryland Authorities. *Defendant's Affidavit.*

Plaintiff filed a complaint in the Circuit Court for Dickenson County, Virginia for damages caused by the "deliberate and intentional acts and torts" of the Defendant. *Final Order.* Defendant filed an answer to Plaintiff's complaint. *Id.* On the day of trial, February 1, 1995, however, neither the Defendant nor anyone on his behalf appeared. *Id.* The presiding judge found that Defendant had been given proper notice of the trial date and proceeded to hear the case. *Id.* After Plaintiff introduced his evidence, a jury returned a verdict in favor of Plaintiff and awarded him $150,000 as compensatory damages and $3,000,000 as punitive damages for a total of $3,150,000. *Id.* Pursuant to § 8.01–38.1 of the Code of Virginia, as amended, the trial court reduced the jury's award of punitive damages to $350,000. *Amended Order.* This reduction in punitive

damages left Plaintiff with a judgment against Defendant for $500,000. *Id.*

On October 11, 1995, Defendant filed his chapter 7 bankruptcy petition in this court. Plaintiff filed this complaint on December 20, 1995 requesting a determination that the Circuit Court for Dickenson County's judgment in the amount of $500,000 is nondischargeable under 11 U.S.C. § 523(a)(6). In his opposition to Plaintiff's motion for summary judgment, Defendant admits that the Dickenson County "action was predicated on deliberate and intentional acts of the Debtor, i.e., willful conduct ...", but Defendant denies that the court actually litigated the issue of malice.

## IV. DISCUSSION

### a. Section 523(a)(6)

Pursuant to 11 U.S.C. § 523(a)(6) a debt attributable to "willful and malicious injury by the debtor to another entity ..." is nondischargeable in bankruptcy. The terms "willful" and "malicious" are separate elements, both of which must be proven by a preponderance of evidence. *St. Paul Fire & Marine Ins. Co. v. Vaughn,* 779 F.2d 1003, 1010 (4th Cir.1985); *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The word willful in the context of § 523(a)(6) means that a defendant's actions were deliberate or intentional. *In re Stanley,* 66 F.3d 664, 667 (4th Cir.1995) ("We noted in *St. Paul* that 'willful' means 'deliberate or intentional.'"); *In re McCown,* 129 B.R. 432, 438 (Bankr.D.Md.1991) ("willful means deliberate or intentional"). Malice does not mean the same thing in the § 523(a)(6) setting that it often does in other areas of the law, *i.e.* it does not require an evil or rancorous motive. A debtor may act with malice under § 523(a)(6) even though he or she bears no subjective ill will toward the creditor. *In re Stanley,* 66 F.3d at 667. All that is required is that the debtor act "wrongful[ly] and without just cause," *In re McNallen,* 62 F.3d 619, 626 (4th Cir.1995), or "in knowing disregard of the rights of another." *In re Stanley,* 66 F.3d at 667. Plaintiff urges that both elements are established by the collateral estoppel effect of his state court judgment.

### b. Collateral Estoppel

Collateral estoppel, otherwise known as issue preclusion, bars relitigation of an issue previously decided. *Combs v. Richardson,* 838 F.2d 112, 115 (4th Cir.1988) (citing *Allen v. McCurry,* 449 U.S. 90, 94–95, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980)). Collateral estoppel may be invoked in dischargeability proceedings. *Grogan v. Garner,* 498 U.S. at 284–85, n. 11, 111 S.Ct. at 658, n. 11; *Combs v. Richardson,* 838 F.2d at 115; *In re McCown,* 129 B.R. at 437; *In re Piercy,* 140 B.R. 108, 113 (Bankr.D.Md.1992). To invoke collateral estoppel, however, the issue as to which it is raised must have been both actually litigated and necessarily decided. *In re Raynor,* 922 F.2d 1146 (4th Cir. 1991).

*In re Raynor* involved a situation similar to the one in this case. In *Raynor,* M & M Transmissions sued Raynor for fraud in a state court proceeding. Although Raynor engaged counsel to represent him in the proceedings, neither Raynor nor his attorney filed a formal appearance or an answer. Rather, counsel negotiated a settlement that failed. Nevertheless, the case was set for trial. Just before trial, having been unable to contact his client, Raynor's attorney moved to withdraw as Raynor's attorney, and the motion was granted. Raynor was left with no notice of the trial and no attorney. When no one appeared on Raynor's behalf, M & M Transmissions presented its evidence unopposed. After the creditor finished presenting its evidence, the trial court entered a default judgment against Raynor, including punitive damages. *Id.* at 1147. The final judgment was $144,000. Raynor moved for relief from the judgment, and the motion was denied, because no meritorious defense was apparent, even after he put on testimony.

Raynor subsequently filed bankruptcy. M & M Transmissions responded by filing an adversary complaint to have its default judgment declared nondischargeable under 11 U.S.C. § 523(a)(6). Relying solely on the state court's default judgment, the bankruptcy court awarded M & M Transmissions summary judgment that the judgment debt

was nondischargeable. Raynor appealed this decision to the district court, which affirmed the bankruptcy court.

In overruling the lower courts, the United States Court of Appeals for the Fourth Circuit focused on the requirement of actually litigated. Highlighting the fact that the state court judgment against Raynor was a default judgment, the court explained: "[T]he doctrine of collateral estoppel only precludes relitigation of issues actually and necessarily decided, and it is well established that a state court default judgment does not have collateral estoppel effect because it is not the result of actual litigation." *In re Raynor*, 922 F.2d at 1149. Although the trial judge made written findings of fact and conclusions over 15 single spaced pages and found that each element of fraud had been established, the Court of Appeals noted there had been no cross examination. The appellate court accepted the judgment as a default judgment. Since the state court judgment against Raynor was a default judgment, Raynor could not be collaterally estopped by it. The facts that Raynor's counsel had been active in settlement negotiations and that the plaintiff had presented evidence at trial did not change the nature of the judgment because neither Raynor nor his lawyer formally entered an appearance before the court or filed an answer. *Raynor*, therefore, merely stands for the proposition that a default judgment cannot be wielded as a sword for collateral estoppel purposes.

 The case at bar differs from *Raynor*. It is not the typical default case where a defendant fails to answer or appear, and judgment is then entered in favor of the plaintiff. Defendant filed an answer, but he failed to appear for trial. The state court found defendant had been given proper notice of trial, and no reason has been advanced why defendant failed to appear for trial. Moreover, judgment was entered only after Plaintiff's evidence was heard and considered by a jury. The trial court instructed the jury, and the jury reached the verdict. A final order was entered, not a default judgment. Since evidence was heard at trial, this case is different from a situation where a summary judgment is issued after certain key points are deemed admitted by the failure of a party to respond to a Request for Admissions. *See In re Stankovich*, 171 B.R. 27, 30 (Bankr.E.D.Va.1994) (finding that collateral estoppel did not apply to a situation where there were no evidentiary hearings and a summary judgment was issued based on the defendant's failure to answer a Request for Admissions).

The justification for the principle of issue preclusion (collateral estoppel) is that later courts should respect the first actual decision of a matter that has been litigated, as between the parties thereto. This result promotes certainty and fairness between the parties, as well as judicial economy. *See Southern Pacific Railroad v. United States*, 168 U.S. 1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897). Application of the principle bars repetitious litigation and expense, and it avoids problems caused by inconsistent results. *See generally* 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure*, § 4416 (1981).

Once an issue has been properly framed and put at issue in prior litigation, issue preclusion is applicable even if the litigation was one-sided. *See* Wright, Miller, Cooper at § 4419. In such circumstances, there is an expectation by the parties that the issue will be decided, and the subsequent court is not in a position to evaluate a party's litigation strategy in another case. Further, it would be unfair to permit a party to avoid the preclusive effect of an anticipated adverse decision merely by not appearing for trial or by not having a factual defense to present. As stated in Wright, Miller, Cooper, at § 4442, in contrasting such a situation to a default:

The problem of issue preclusion after a one-sided trial also arises after a defendant answers on the merits and then fails to appear for trial or to offer evidence on particular issues. It is not uncommon for lawyers to describe such events loosely as defaults. Conceptually, however, trial is required to prove any matters that have not been admitted in the pleadings. It is far from clear that issue preclusion should be denied simply because the resulting trial was one-sided.

A majority of courts differentiate between a default judgment where the defendant makes no appearance and a judgment granted after a defendant files an answer, but fails to appear at trial. *See e.g. In re Staggs,* 178 B.R. 767, 780 (Bankr.N.D.Ind.1994), *aff'd* 177 B.R. 92 (N.D.Ind.1995); *Matter of Holt,* 173 B.R. 806, 814 (Bankr.M.D.Ga.1994); *In re Herwig,* 77 B.R. 662, 663 (Bankr.S.D.Ill. 1987).

There should be a difference in effect as to issue preclusion between a default judgment where there is no participation by a party and an uncontested judgment against a party that has appeared but has elected not to defend. If an answer is filed, then the case *may* be deemed to have been actually litigated. *Id.* To hold otherwise would allow defendants to play the litigation game, while providing them with a mechanism by which to escape the collateral estoppel effects of an adverse judgment if things start to go badly. A plaintiff who has been forced to undergo the costs of litigation should not be deprived of the fruits of its labor in this way. Wright, Miller, Cooper at § 4442. Once an answer has been filed by a defendant and the case is at issue, the defendant cannot assume it is permissible to quit at any time prior to trial and not be subject to the constraints of collateral estoppel. *Id.; In re Staggs,* 178 B.R. at 778 (holding that the actually litigated requirement is satisfied whenever, after a party has appeared in an action and contested an issue, the issue is presented to the court for a decision based upon the facts or evidence put before it).

A prior judgment satisfies the actually litigated standard, however, only if the party against whom the judgment was entered had proper incentive to litigate the matter in the prior hearing and could reasonably foresee later litigation on the same issue. *In re Polechronis,* 186 B.R. 1, 3 (D.Mass.1995) (dealing with the problem of the collateral estoppel effect of an uncontested summary judgment). *See also* Wright, Miller, Cooper at § 4442, where the authors observe: "Most harsh results could be avoided by particularly sympathetic application of the rules that issue preclusion can be defeated if there was no sufficient incentive to litigate or if later litigation was not reasonably foreseeable."

In this case, mitigating circumstances that might free the Defendant from the tentacles of collateral estoppel are not present. Defendant had every incentive to defend himself in the state court proceedings. It was foreseeable that issues raised for determination in the state court proceeding could have severe, adverse consequences for the Defendant. Moreover, Plaintiff not only prepared for trial, but actually went to trial, presenting his case to a jury. The state court instructed the jury; the jury found for Plaintiff; and a final order and judgment was entered, not a default judgment. This court accordingly finds that the Dickenson County judgment was actually litigated.

The Court of Appeals decision in *Raynor* constitutes binding authority on this court. There are three material differences between the instant facts and the factual scenario in *Raynor.* First, here the Debtor filed an answer in the state court proceeding, but in *Raynor* the debtor did not answer. Second, the state court found here that proper notice of the trial date had been given, but in *Raynor* counsel represented he had been unable to contact the debtor, who presumably had no notice of the trial date. Third, a final order and judgment was entered on a jury verdict in the instant case, but in *Raynor* a default judgment was entered by the court, albeit based on findings and including punitive damages. The court concludes that these differences are sufficient to distinguish *Raynor,* which found collateral estoppel inapplicable, and to justify application of issue preclusion, based on the purposes for the doctrine and its prior application that have been discussed previously.

In reaching this conclusion, the court is aware that it may be contrary to the application of *Raynor* to similar facts in *In re Cuffey,* 162 B.R. 469 (Bankr.E.D.Va.1993). *Raynor* was a close case, as indicated by the fact that it was a 2 to 1 decision, with a dissenting opinion. The court in *Cuffey* extended *Raynor* to a situation in which the debtor had filed an answer, was aware that trial was scheduled, and chose not to appear at trial. The court did so by finding the crux of *Raynor* to be that the issue of fraud was

not actually litigated because the debtor failed to appear and litigate. 162 B.R. at 472. The focus in *Raynor*, however, was that the judgment was a default judgment that was never litigated; and defendant never answered. *Raynor* should not be extended to a situation where the defendant answered, had the incentive to litigate, was faced with the foreseeable binding effect of an adverse judgment, and elected not to appear.

■ The court must next determine what the Circuit Court for Dickenson County necessarily decided by its final order and judgment. Specifically, did the jury find that the Defendant acted with willful and malicious intent in abducting the Plaintiff at gun point. Defendant concedes that the Dickenson County judgment against him was based "upon the theory of deliberate and intentional acts and torts by the defendants." The Circuit Court for Dickenson County's *Final Order* confirms Defendant's understanding of this judgment. Defendant is thus collaterally estopped from relitigating the issue of willfulness.

■ Under Virginia law, for punitive damages to be awarded, the finder-of-fact must find that the defendant either acted with actual malice or in conscious disregard of the rights of another. *In re Shepherd*, 56 B.R. 218, 221 (W.D.Va.1985); *Bowers v. Westvaco Corp.*, 244 Va. 139, 419 S.E.2d 661, 668 (1992); *Owens–Corning Fiberglas Corp. v. Watson*, 243 Va. 128, 413 S.E.2d 630, 639 (1992), *Booth v. Robertson*, 236 Va. 269, 374 S.E.2d 1, 3 (1988). Under § 523(a)(6), a debtor acts with malice if he or she either acts wrongfully and without just cause or excuse, *In re McNallen*, 62 F.3d 619, 626 (4th Cir.1995), or "in knowing disregard of the rights of another." *In re Stanley*, 66 F.3d at 667 (emphasis added). "The standard for malice in Virginia is congruent with that used in the bankruptcy code." *In re Shepherd*, 56 B.R. at 221 (W.D.Va.1985) (citing *Bennett v. W.T. Grant Co.*, 481 F.2d 664 (4th Cir.1973)). Consequently, since the Circuit Court for Dickenson County assessed punitive damages against Defendant, it necessarily found that Defendant acted with malice. Defendant is thus also collaterally estopped from relitigating the issue of mal-

ice. Summary judgment, therefore, is appropriate.

■ The only remaining issue is to what extent Plaintiff's judgment against Defendant is nondischargeable. Plaintiff's State court judgment against the Defendant can be divided into two parts: $150,000 compensatory damages and $350,000 punitive damages. The fact that Plaintiff's compensatory damages are nondischargeable is straightforward, since they arise directly from a willful and malicious injury caused by the Debtor to another entity. *See* § 523(a)(6). Punitive damages, theoretically, go beyond the injury caused by the Debtor in that they are intended to punish the Debtor for his willful and malicious act. However, when punitive damages spring from the same conduct giving rise to nondischargeable compensatory damages, such punitive damages are also not dischargeable in bankruptcy. *In re McNallen*, 62 F.3d at 626–27. *See also In re Miera*, 926 F.2d 741, 745 (8th Cir.1991); *In re Adams*, 761 F.2d 1422, 1427–28 (9th Cir. 1985). This is because the punitive damages still arise from the "willful and malicious injury by the debtor to another entity." § 523(a)(6). Plaintiff's award of punitive damages stemmed from his unwarranted abduction by Defendant. This is the same willful and malicious injury that gave rise to Plaintiff's compensatory damages. Since Plaintiff has proven the necessary elements to establish that his compensatory damages are nondischargeable, he has also proven the necessary elements to establish that his punitive damages are nondischargeable. Plaintiff's Motion for Summary Judgment will be granted. Plaintiff's entire judgment against the Defendant is nondischargeable.

## V. CONCLUSION

The court finds that Plaintiff's Dickenson County judgment actually litigated and necessarily decided the issues of willfulness and of malice, and that Plaintiff's punitive damages arose from the same willful and malicious injury as his compensatory damages. Therefore, Plaintiff's Motion for Summary Judgment is granted, and the Dickenson County judgment against the Defendant in the amount of $500,000 is determined to be

nondischargeable under 11 U.S.C. § 523(a)(6).