In re Frederick D. LONGHENRY, Debtor.

Frederick D. Longhenry, Plaintiff,

v.

Herbert M. Wyatt, and Patricia Wyatt, Defendants.

Bankruptcy No. 99–5–1527–SD.
Adversary No. 99–5356–SD.

United States Bankruptcy Court, D. Maryland, at Baltimore.

Feb. 25, 2000.

John Burkhardt, Towson, MD, for the Debtor/Plaintiff.

Constance Hare, Mehlman & Greenblatt, LLC, Baltimore, MD, for the Defendant.

Sarah E. Longson, Baltimore, MD, Chapter 7 Trustee.

### MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT THAT DEBT FOR LOSS OF CONSORTIUM IS NONDISCHARGEABLE

E. STEPHEN DERBY, Bankruptcy Judge.

## I. INTRODUCTION

Before the court in this nondischargeability proceeding are cross motions for summary judgment. The issue is whether a judgment for loss of consortium is nondischargeable under 11 U.S.C. § 523(a)(9) as a debt for personal injury. By virtue of 28 U.S.C. § 157(b)(2)(I), this is a core proceeding; and the court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(a). The court concludes that a debtor's liability for an award for loss of consortium caused by the debtor's unlawful operation of a motor vehicle while under the influence of drugs or alcohol is nondischargeable. Consequently, the court will deny Plaintiff's motion for summary judgment and grant Defendants' motion for summary judgment.

## II. FINDINGS OF FACT

On March 21, 1993, Frederick D. Longhenry ("Debtor" and "Plaintiff") was unlawfully driving his vehicle while intoxicated. Mr. Longhenry struck the rear-end of the vehicle driven by Herbert Wyatt, a defendant. Mr. Longhenry was arrested at the scene of the accident after failing a field sobriety test. At the police barracks a Breathalyzer test revealed Mr. Longhenry's blood alcohol level to be .22, a level

almost three times the legal limit in Maryland.

Mr. Wyatt and his wife, Patricia, filed a multi-count complaint against Mr. Longhenry on March 18, 1996 in the Circuit Court for Carroll County. The Wyatts obtained a default judgment as to liability on September 5, 1997. On August 3, 1998, the state court conducted an evidentiary hearing to determine the amount of the Wyatts' damages. Damages were awarded in the following amounts:

|  |  |
|---|---|
| $ 24,949.38 | for medical expenses |
| $ 5,689.12 | for lost wages |
| $ 75,000.00 | for non-economic damages |
| $ 25,000.00 | for loss of consortium |
| $130,638.50 | TOTAL |

When the Wyatts commenced post-judgment collection efforts, Mr. Longhenry filed his petition under Chapter 7 of the Bankruptcy Code. Mr. Longhenry filed this adversary complaint to determine the dischargeability of the portion of the Wyatts' state court judgment against him that was for loss of consortium.

## III. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(c), made applicable by FED. R. BANKR. P. 7056. *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is one that might affect the outcome of the suit, *see Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; and a genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248–49, 106 S.Ct. 2505.

Because both plaintiffs and defendants may move for summary judgment under FED.R.CIV.P. 56(a) and (b), courts are often confronted with cross motions. In such situations, the court must consider each party's motion individually to determine if that party has satisfied the summary judgment standard. *See Lucas v. Curran,* 856 F.Supp. 260 (D.Md.1994); 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE, § 2720 (1983).

In presenting a motion for summary judgment, the burden is on the moving party to demonstrate by a properly supported motion that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. The moving party has the initial responsibility of informing the court of the basis that warrants summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ramsey v. Bernstein (In re Bernstein),* 197 B.R. 475 (Bankr.D.Md.1996), *aff'd* 113 F.3d 1231 (4th Cir.1997). Applying these standards and procedures, the court will first consider Plaintiff's motion, and then consider Defendants' cross motion.

## IV. CONCLUSIONS OF LAW

### A. *Statutory Construction and the Plain Meaning of the Term "Personal Injury".*

This is an issue of first impression in this court and Circuit. To determine whether a claim for loss of consortium falls within the definition of personal injury as used in 11 U.S.C. § 523(a)(9), analysis must begin with the language of the statute. The first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute. The inquiry should cease if the statutory language is unambiguous and "the statutory scheme is coherent and consistent." *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 240, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); see also

*Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 253–254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole. *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 477, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992).

Here, the pertinent statute provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

* * * * * *

(9) for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance....

11 U.S.C. § 523(a)(9). The specific language at issue is the term personal injury. Plaintiff argues that the term should be interpreted narrowly to mean (1) bodily harm and (2) harm specifically sustained by an individual. Defendants take the position that personal injury should be interpreted broadly to include all trauma or detriment experienced by a person.

Congress did not define personal injury in the Bankruptcy Code. The definition of the term in Black's Law Dictionary is not determinative because it includes both a narrow and broad definition. They are, respectively: "1. In a negligence action, any harm caused to a person, such as a broken bone, a cut or a bruise; bodily injury. 2. Any invasion of a personal right, including mental suffering and false imprisonment." Black's Law Dictionary 770 (7th Ed.1999).

Congress could have defined the term personal injury in such a way that the term would explicitly exclude non-bodily injuries and claims including loss of consortium, but it did not. Bankruptcy courts have interpreted the phrase to include non-bodily injury. The court in *In re Williams,* 175 B.R. 17 (Bankr.M.D.Tenn. 1994) articulated a broad definition: " 'Personal injury' is not ambiguous: it means physical or mental impairment, damage, loss or detriment to a person." *Id.* at 18. Typically, bankruptcy courts construing the phrase have recognized that the term personal injury in the Bankruptcy Code means injury to a person as distinguished from property. *Id.; In re Wiggins,* 180 B.R. 676, 680 (M.D.Ala.1995); *In re Spencer,* 168 B.R. 142 (Bankr.N.D.Tex. 1994); *In re Chapin,* 155 B.R. 323, 326 (Bankr.W.D.N.Y.1993). These courts in analyzing § 523(a)(9) have made the distinction between injury to persons and injury to chattel, but they have not further refined the range of claims properly characterized as injuries to a person.

This court adopts a broad definition of personal injury because it reflects its natural meaning and it furthers the intent of Congress. An inclusive construction of the term personal injury in 11 U.S.C. § 523(a)(9) is consistent with a reading of other sections of the Bankruptcy Code. Any ambiguity in the phrase personal injury in § 523(a)(9) may be resolved by consideration of the remainder of the statutory scheme in general and any other Code section that makes reference to personal injury in particular. "Statutory construction ... is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). (Citations omitted.).

Section § 522(d)(11)(D) includes an exemption available under federal bankrupt-

cy law for payments on account of personal bodily injury.

> (D) a payment, not to exceed $16,150 on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent...

11 U.S.C. § 522(d)(11)(D). It is noteworthy that Congress expressly limited the exemption to bodily injuries incurred and excluded amounts for mental anguish. Given the clarity of Congressional intent to exclude non-bodily personal injuries from the exemption provided in § 522(d), the court is led to conclude that Congress declined the same limitation on the dischargeability exception in § 523(a). The plain language of § 523(a)(9) does not include the same limiting language found in § 522(d)(11), and the court will not read the limitation clearly expressed in § 522(d)(11) into the plain language of § 523(a)(9).

Other courts examining the treatment of claims for personal injuries in a bankruptcy context have concluded that personal injury includes claims for loss of consortium. For example, courts construing the scope of personal injury exemptions have provided that money payable for a loss of consortium may be claimed as exempt from execution. In Maryland, a state statute providing an exemption for money payable for "injury of any person" has been held to include a potential award for loss of consortium. *Niedermayer v. Adelman*, 90 B.R. 146 (D.Md.1988). Similarly, courts in other jurisdictions have found that proceeds from debtors' claims for loss of consortium are entitled to be exempted as damages for personal injuries. *In re Dealey*, 204 B.R. 17 (Bankr.C.D.Ill.1997)(Loss of consortium claim exempt under Illinois personal bodily injury exception); *In re Young*, 93 B.R. 590 (Bankr.S.D.Ohio1988) (Loss of consortium does establish a personal injury to the spouse under the Ohio exemption statute); *In re Keyworth*, 47 B.R. 966, 973 (D.Colo.1985) (Loss of con-

sortium is personal injury under Colorado exemption statute). While these cases are not controlling authority, they offer persuasive insight into the common understanding of the meaning of the phrase personal injury.

The legislative history of § 523(a)(9) also offers elucidation. The "strong presumption" that the plain language of the statute expresses congressional intent is rebutted only in "rare and exceptional circumstances" when a contrary legislative intent is clearly expressed. *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981). *INS v. Cardoza–Fonseca*, 480 U.S. 421, 432, n. 12, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). An examination of the legislative history of 11 U.S.C. § 523(a)(9) fails to reveal a clear expression of Congressional intent to exclude claims for loss of consortium. "Congress sought three objectives when it adopted § 523(a)(9): (1) to deter drunk driving; (2) to ensure that those who caused injury by driving drunk did not escape civil liability through the bankruptcy laws; and (3) to protect victims of drunk driving." *In re Kugler*, 170 B.R. 291 (Bankr.E.D.Va.1994) (quoting *Stackhouse v. Hudson* (*In re Hudson*), 859 F.2d 1418, 1423 (9th Cir. 1988)). The Senate Report accompanying the enactment of the Drunk Driver Victims' Protection Act of 1990, which also amended § 523(a)(9), elaborates on Congress' intent to protect the victims of drunk driving.

> A drunk driving crash in which an innocent victim is injured or killed is a tragedy. It is a double tragedy if the drunk driver can avoid paying a civil judgment to his victims by seeking protection under the Bankruptcy Code. [This bill] will help ensure that victims are compensated for their damages by drunk drivers. Those guilty of destroying the lives of innocent citizens will no longer find safe haven in our bankruptcy laws... As Chairman Biden stated, [this bill] "prevents drunk driving victims from being victimized a second time

under the bankruptcy laws," and "protects the rights of drunk driving victims."

S.Rep. No. 101–434, at 3, 4 (1990), reprinted in 1990 U.S.C.C.A.N. 4065, at 4066, 4067 (quoting Statement of Chairman Biden on S.1931, June 14, 1990). These statements of Congressional intent articulate the objective of preventing the drunk driver as a bankruptcy debtor from escaping civil liability, without limitation, to an innocent victim, here the defendant judgment creditors. There is no hint in the legislative history that Congress intended to protect innocent victims only against certain types of personal injury.

■ Exceptions to discharge must be narrowly construed against creditors and liberally construed in favor of the debtor. *See, e.g., Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). This is consistent with the Bankruptcy Code's overall objective to offer a fresh start to honest but unfortunate debtors. *Grogan v. Garner*, 498 U.S. 279, 285, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The language found in the Code sections providing an exception to discharge represent the result of Congressional balancing of the competing public policy considerations of offering a fresh start and limiting the discharge privilege where appropriate. *Cf., Johnson v. Edinboro State College*, 728 F.2d 163, 164 (3d Cir.1984); *Willison v. Race*, 192 B.R. 949, 952 (W.D.Mo.1995); *Matter of Barth*, 86 B.R. 146, 149 (Bankr.W.D.Wis. 1988). Accordingly, this court will apply the exception designated in 11 U.S.C. § 523(a)(9) as per the plain language expressed within the statute to effect its natural meaning.

■ Given the clarity of the statutory language itself, the specific context in which that language is used, the legislative history, and the broader context of the statute as a whole, the court concludes that there is no ambiguity regarding the phrase personal injury as it is used in 11 U.S.C. § 523(a)(9). It encompasses non-

bodily harm, and it should be interpreted broadly to fulfil the intent of Congress.

**B. *Loss of Consortium is a Personal Injury under Maryland law.***

■ The remaining issue is whether a claim for loss of consortium that is recognized under Maryland law is of a character that qualifies as a personal injury under 11 U.S.C. § 523(a)(9). Loss of consortium includes the loss of society, affection, assistance, and conjugal fellowship. *MacCubbin v. Wallace*, 42 Md.App. 325, 327, 400 A.2d 461 (1979). The leading Maryland case that discusses loss of consortium is *Deems v. Western Maryland Ry.*, 247 Md. 95, 231 A.2d 514 (1967). In *Deems*, the Court of Appeals stated:

> That both spouses suffer when the marriage relationship is adversely affected by physical injury to either is a fact evidenced, if not by logic, by human experience since the institution of marriage became a basic part of our mores. If the husband is the one injured, it is *not only the wife who is affected* by reason of any resulting change of the husband's personality or ability to engage in all of the intangible associations which marriage brings; *he too suffers the effect of the change,* if only in reaction to his wife's unhappiness.

*Id.* at 108–09, 231 A.2d 514. (Emphasis added.). Under Maryland law a claim for loss of consortium is brought to recover for injury to the marital relationship, and it is brought by both spouses for the injury to them both. However, the underlying purpose and the rationale of the joint action is to compensate the individual persons who form that relationship for the personal injury that they each sustain. *Phipps v. General Motors*, 278 Md. 337, 355, 363 A.2d 955 (1976); *Butcher v. Robertshaw Controls Co.*, 550 F.Supp. 692, 705 (D.Md.1981).

■ Plaintiff makes much of the fact that a cause of action for loss of consortium must be brought by both spouses in a joint action. Plaintiff argues that the re-

quirement for the cause of action be asserted jointly supports the conclusion that loss of consortium is an injury sustained by the marital entity, and not an injury sustained by a person. Indeed, *Deems* established a procedural requirement that such a claim, which previously could have been asserted only by the husband in a separate action, must be asserted by both spouses and tried at the same time as the principal tort action brought by the injured spouse. *Deems*, 247 Md. at 115, 231 A.2d at 525. However, this procedural requirement is not dispositive of the proper characterization of a loss of consortium claim. The procedural requirement articulated in *Deems* was a remedy fashioned by the court to address a constitutional challenge to the common law rule that only a husband was entitled to be compensated for the loss of his wife's consortium.[1] Thus, although a cause of action for loss of consortium must be brought in a joint action by both affected spouses to seek a remedy for the injury to the marital relationship, loss of consortium is still properly characterized as a personal injury claim for the harm suffered by the individuals who are parties to the marital relationship.

The *Phipps* case is extremely instructive and disposes of the core of Plaintiff's argument. *Phipps* concerned a breach of warranty action brought under the Commercial Code. The governing law in the case was the Maryland Uniform Commercial Code which extends a seller's warranty to "any natural person... who is injured in person by breach of the warranty." Md. Com. Law Code Ann., § 2–318 (1975). The defendant, General Motors, relied on *Deems* and advanced the same argument brought by the Plaintiff in the instant case.

General Motors argued that no action for loss of consortium could be brought to seek compensation for a personal injury as the marriage relationship was not a "natural person" who was "injured in person". The Maryland Court of Appeals in *Phipps*, dismissed the argument made by General Motors as contrary to the theory of *Deems*. "The reasoning of the Court in *Deems* clearly indicates that an action for loss of consortium is an action for injury to both spouses and not, as General Motors contends, an action for damages to a legal entity separate and apart from the persons who comprise that 'entity.'" *Id.* at 354, 363 A.2d 955. The court concluded that a requirement that a party be injured in person was not intended to prevent recovery for *such uniquely personal injuries as loss of consortium* which traditionally were recoverable in a personal injury action. *Id.* at 356, 363 A.2d 955 (Emphasis added.). This court adopts the reasoning of the *Phipps* court and rejects Plaintiff's argument that loss of consortium is properly characterized as injury to an entity rather than a person.

Plaintiff's reliance on *Travelers Indemnity Co. v. Cornelsen*, 272 Md. 48, 321 A.2d 149 (1974) for the assertion that a claim for loss of consortium is not properly characterized as an injury sustained by a person is misplaced. *Travelers* states that the Maryland law regarding loss of consortium as articulated in *Deems* was being tested and applied against the insurance company's limitation of liability to "bodily injury sustained by one person as the result of any one occurrence".[2] The holding in *Travelers* was limited to a determination

1. "If the right to sue for loss of consortium is regarded as available only to the husband and wife jointly, there is no longer a question of the unequal treatment of wife and husband by the courts." *Deems*, 247 Md. at 106, 231 A.2d at 520.

2. The policy contained the following limitation:
"The limit of bodily injury liability stated in the declarations as applicable to 'each person' is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of one occurrence; but subject to the above provision respecting 'each person', the total liability of the company for all damages because of bodily injury sustained by two or more persons as the result of any one occurrence shall not exceed the limit of bodily injury liability stated in the declarations as applicable to 'each occurrence.'" *Id.* at 49, 321 A.2d 149.

that given the limitation of the insurer's policy and the reference to bodily injury, a claim for loss of consortium was not properly characterized as a bodily injury sustained by a person. *Id.* at 50, 321 A.2d at 150. There is no similar bodily injury language in § 523(a)(9). Consequently, the holding of *Travelers* is not persuasive authority here.

That a loss of consortium claim under Maryland law is properly characterized as a personal injury comports with this court's reading of federal law and Congressional intent concerning 11 U.S.C. § 523(a)(9). Therefore, the court concludes that Plaintiff's liability for a debt awarded to compensate Defendants for loss of consortium is properly excepted from discharge under § 523(a)(9).

## V. RULINGS

Because there is no genuine dispute as to any material fact and Plaintiff is unable to demonstrate that he is entitled to judgment as a matter of law, his motion for summary judgment will be denied.

Defendants have established that their claim for loss of consortium arose from a judgment entered in a court of record as the result of the debtor's operation of the motor vehicle while legally intoxicated. Since the elements of § 523(a)(9) have thereby been met, Defendants are entitled to judgment as a matter of law.

Therefore, it is, this 24th day of February, 2000, by the United States Bankruptcy Court for the District of Maryland,

ORDERED, that Plaintiff's Motion for Summary Judgment is DENIED; and it is further

ORDERED that Defendants' Motion for Summary Judgment is GRANTED; and it is further

ORDERED and DECLARED that Plaintiff's debt for the loss of consortium award to Defendants is nondischargeable.